PYLES et ux v. COLE.—241 S. W. (2d) 841.

Eastern Section.   April 26, 1951.

Petition for Certiorari denied by Supreme Court, June 16, 1951.

Harry G. Sabine, of Crossville, for plaintiff in error.

Tollett & Tollett, of Crossville, for defendant in error.

McAMIS, J. This is a suit to collect a commission of five per cent alleged to be due for the sale of a farm belonging to the defendants Pyles and wife. The case originated before a Justice of the Peace for Cumberland County where judgment was rendered for the plaintiff and, on appeal, the Circuit Judge, sitting without a jury, rendered a judgment for $75.

By their appeal defendants Pyles and wife have renewed here their insistence: (1) that the listing contract had expired before negotiations with the purchaser began; (2) the plaintiff breached the listing contract by attempting to sell the property for more than the list price; (3) the sale was not the product of plaintiff's efforts; and (4) the suit should be held barred because plaintiff was not a legally licensed real estate broker.

On May 6, 1949, defendants entered into a written contract with plaintiff to sell their farm for $3,500 for a commission of five per cent. The listing was to run for a period of 90 days ''and thereafter until terminated by — days written notice.''

Within 90 days plaintiff advertised the farm for sale in a local newspaper and showed it to a number of prospective purchasers. He was unable to make a sale to any of these prospects though he was still carrying on negotiations with one of them at the time the ultimate purchaser, James V. Crockett, became interested in the property. Defendants both testified that near the end of the 90 day period plaintiff inquired of them whether they desired to renew the listing and that, upon receiving a negative reply, plaintiff promised to tear up the contract if he failed to sell it within 90 days. This is denied by plaintiff who testified, without contradiction, that after Crockett became interested, W. H. Pyles expressly promised to pay commissions if a sale should be consummated to Crockett. In our view of the case it is unnecessary to resolve the dispute as to whether plaintiff agreed to destroy the contract at the end of 90 days.

Within a few days after the expiration of the initial 90 day period, Crockett came to Crossville from another county to buy a farm in Cumberland County. According to Crockett's testimony, he learned that plaintiff was a

real estate agent and visited his office to see what farms, if any, he had listed for sale. Plaintiff thereupon took Crockett and his companion, Mitchell, to see two other farms which he had listed at the time and, finally, showed them over defendants' farm. Defendants were at home at the time and knew that plaintiff was showing the farm to Crockett. Defendants did not know Crockett and he did not know them or that they had a farm for sale until Crockett was brought to the farm by plaintiff. As indicated, plaintiff's testimony that they promised to pay him in event of a sale is undenied and it is clearly to be inferred from all the circumstances that defendants acquiesced in plaintiff's efforts to produce a purchaser after the expiration of the 90 day period.

Crockett returned to the farm the following Sunday and continued negotiations with defendants. About 10 days later, in the absence of plaintiff, defendants completed the sale by the execution and delivery of a deed conveying the farm to Crockett at the list price of $3,500.

█ █ Pretermitting the question of whether or not plaintiff orally agreed to terminate the contract at the end of 90 days and, if so, whether, in view of the provision for written notice of termination, such an oral understanding would be binding on plaintiff, we hold that defendants impliedly renewed the contract by accepting plaintiff's efforts and services and agreeing to pay commissions in event of a sale to the prospect originated by him. Nunmerous cases could be cited sustaining the rule that where a provision in a brokerage contract provides for termination at a fixed time the contract will be deemed renewed and the termination provision waived where the principal has recognized that the broker is continuing negotiations looking to a sale or requests that he do so. Annotations 26 A. L. R. 800; 140 A. L. R., 1023.

Though not involving a real estate listing contract our own case of Ryan v. Reed Air Filter Co., 11 Tenn. App. 472, is in accord. In that case Ryan had a contract with the defendant Reed Air Filter Co. for the sale of defendant's goods in a certain territory to run for a period of one year. After the expiration of the time limit fixed by the contract and after the agent had corresponded with the principal, the agent effected a sale of goods in his territory. The suit was to recover the contract commission on the theory of an implied renewal of the terms of the original contract. After citing numerous authorities, the opinion sums up the holding of the court as follows: ·

"It follows that, the contract having been renewed by implication for another year, according to its terms, 30 days' written notice was required for the termination of the contract, and the second order having been given and accepted before the 30 days had expired, Ryan is entitled, as a matter of course, to commissions on both orders, and the assignments of error on these propositions must be overruled."

We think this a sound and just rule and that it is properly applicable to cases involving real estate brokerage contracts such as here involved.

We are unable to follow the argument that plaintiff should be denied recovery because he breached the listing contract by attempting to sell the property for $3,800 instead of $3,500, the list price. Plaintiff denies that he made such an attempt but if made it was not, in our opinion, a breach of the contract. Some courts hold that where a real estate broker, after failing to sell the property at the list price, induces the ultimate purchaser to believe that the property could be bought for less, there is a breach of the fiduciary relationship which, as a matter of law, bars any recovery by the broker. See interesting

and instructive discussion of the question in Vanderbilt Law Review of February, 1951, (Vol. 4, issue No. 2). We have not been cited to any authority, however, holding the converse situation to deprive the broker of commissions and, in our opinion, to so hold would be unsound and out of harmony with common experience and the practices usually followed by real estate commission agents. If the broker had succeeded in securing more than the list price, the principal would have been the beneficiary of his efforts and there would have been no complaint. It is well known that this is an artifice for effecting a sale at the list price by appearing to reduce the price for the benefit of the prospective purchaser. We can see in the practice no abuse of confidence nor any breach of duty owing the principal.

██ ██ Under the circumstances outlined we think it is clear that the plaintiff broker produced a purchaser able, willing and ready to buy though negotiations were concluded in his absence by defendants. The rule is that if a broker is employed to sell property and he first brings the property to the notice of the ultimate purchaser, and upon such notice the sale is effected by the owner, the broker is entitled to commission. Royster v. Mageveney, 77 Tenn. 148.

██ Defendants' plea that plaintiff was not a legally licensed real estate broker presented an affirmative issue as to which the burden of proof was upon them. Morton v. Imperial Realty Co., 133 Tenn. 681, 182 S. W. 230; Rugg v. Green, 2 Tenn. App. 406, 408.

It is true that Code Section 1713 provides that the term of the bond required of real estate brokers shall not exceed five years and that plaintiff testified that he executed the required bond more than five years before the transaction in question. However, there is no proof

that a renewal bond had not been executed within five years and the undisputed proof is that plaintiff had been paying each three months the license fee required. The County Court Clerk of Cumberland County testified that he was a legally licensed real estate broker and there is no proof to the contrary.

We find without merit the insistence that evidence that plaintiff paid his license fee quarterly instead of annually amounts to an affirmative showing that he was not legally licensed. Code, Section 1248.2, expressly provides for quarterly payment of fees and renewal of licenses when the statute levying the tax does not expressly require payment for a full year. Code, Section 1718 applying to real estate brokers does not expressly require payment on an annual basis.

We find no error and it results that the judgment must be affirmed with costs.

Hale and Howard, JJ., concur.