## THOMAS v. MILLION.—250 S. W. (2d) 111.

Eastern Section.   March 20, 1952.

Petition for Certiorari denied by Supreme Court, June 7, 1952.

Thomas E. Mitchell, of Johnson City, for appellant.

Chas. T. Herndon, III, of Johnson City, for appellee.

McAMIS, J.   This case is here on the appeal of Walter E. Million, defendant below, from a decree awarding the complainant a recovery of $500 found to be due as real estate brokerage commission.   The assignments renew here the defenses overruled by the Chancellor: (1) A recovery should be denied because the listing contract had been terminated by defendant when the property was sold and (2) at the time of the sale complainant was not a duly licensed broker for the reason that one of the sureties on his bond had removed from the State of Tennessee.

Referring to the parties according to their status in the Chancery Court, complainant is engaged in the real estate brokerage business in Johnson City. On April 18, 1950, defendant listed with him for sale a house and lot at the price of $16,500. Complainant immediately advertised the property for sale and showed it to eighteen or twenty prospects including Eddie Cowell and wife who finally purchased it on July 5, 1950, at $15,000.

The record shows that the Cowells appeared very much interested in the property in April but finally declined to buy it because defendant and his wife would not include a washing machine. In June defendant brought Mr. Cowell to complainant's office to close a sale to the Cowells at a reduced price but the trade failed because Mr. Cowell did not put up the required deposit of $1,500 as earnest money. Still later and apparently about June 29 Mrs. Cowell inquired of defendant's wife whether the property had been sold and again expressed an interest in buying it. The Chancellor found that the Cowells agreed to buy on condition the price be reduced by the amount of the commissions which would be due complainant in case of sale by him. On that date defendant wrote complainant a letter terminating the agency contract and on July 5, 1950, the Cowells agreed to purchase the property for $15,500.

The Chancellor found as a fact that defendant terminated the listing contract in order to avoid the payment of commissions and negotiated with the Cowells while the listing was in full force and effect and "perpetrated a fraud upon the complainant." Although the proof showed that a reasonable commission in such transactions in Johnson City was generally considered to be 5% of the sale price, the Chancellor found that in this instance a reasonable and fair commission would be $500.

■ The record shows that defendant's wife talked with Mrs. Cowell, after the meeting at defendant's office on June 20, 1950, about buying the property directly from defendant and Mr. Cowell contacted defendant about dealing directly with him and avoiding payment of commission. These circumstances and the sequence of events strongly indicate that defendants recognized that, whatever the original listing period, complainant had certain rights which would have to be circumvented and wrote the letter terminating the listing for that purpose as the Chancellor found. We cannot say the evidence preponderates against the finding of fraud and, in fact, no assignment of error is directed to that finding.

■■ If complainant, at the time in question, was acting lawfully as a real estate broker, a question hereinafter considered, we think defendant's liability is controlled by the case of Gilbert v. Smith, 14 Tenn. App. 550, 506, relied upon by complainant in his brief. We quote from the opinion in that case:

"If a broker has brought the parties together and as a result they conclude a contract, he is not deprived of his right to a commission by the fact that the contract so concluded differs in terms from the one which he was authorized to negotiate, particularly where the customer procured is able, ready and willing to enter into a contract on the terms mentioned in the broker's authorization. Where for example the principal consummates a sale to a purchaser found by the broker, he is liable for the commission, although the sale is made at a smaller price than that originally proposed by him to the broker, unless the right to a commission is made conditional on a sale at the price mentioned in the broker's authorization. * * *

"After a broker has found a customer and commenced negotiations, neither the principal nor the customer can break them off and defeat the broker's right to a commission by concluding the transaction without his aid. Nor can a principal reject an offer made by a person found by a broker and then without the broker's intervention sell to the same person and thus defeat the broker's right to a commission. * * * The principal cannot defeat the right to compensation by closing the transaction directly with the customer without the broker's further aid.'

The opinion in Chambers v. Percefull, 28 Tenn. App. 517, 191 S. W. (2d) 568, quotes from 12 C. J. S., Brokers, Sec. 66, subsec. c, p. 154, as follows: "Certainly, commissions are due where, pending negotiations, the owner fraudulently or in bad faith revokes the agency and closes the deal with the person negotiated with by the broker."

As to the illegality of the listing, urged under the second proposition, it appears without dispute that complainant has paid all license fees required of him since 1947 when, in compliance with Code Section 1713, he gave a bond with two sureties to run for a period of five years from that date. Sometime during the year 1950, the exact date not being shown, one of the sureties removed from the State of Tennessee. This contingency is covered by the provisions of the succeeding Code section as follows:

"If one or more of the sureties on such bond dies, becomes insolvent, removes from the state, or otherwise becomes undesirable as such surety, on learning such fact, the clerk shall direct such real estate agent or real estate salesman to appear before the court and give another sufficient bond, to be accepted and approved by the clerk, or in default to deliver up his license, ten days' notice of such demand of such

new bond signed by the clerk to be issued and served on such real estate agent or real estate salesman by the sheriff, and on failure so to do within ten days from the service of such notice, the license of such defaulting real estate agent or salesman shall, without more, become void until such bond is given to the satisfaction of the clerk, and such defaulting person shall until said new bond is given suspend business, and be liable to be proceeded against in all respects as if acting without license.''

We think the reply brief rightly distinguishes this case from Winn v. Wright, 28 Tenn. App. 40, 185 S. W. (2d) 908; Wooldridge v. McFadden, 180 Tenn. 613, 177 S. W. (2d) 556; Glascock v. Mansfield, 25 Tenn. App. 401, 158 S. W. (2d) 358, on the ground that in this case the broker complied with all statutory requirements and the question is whether he should be repelled for the supposed default in failing to supply a surety to replace the one who removed from the State. We can do no better than adopt the well-reasoned argument of the author of the brief:

"Here the complainant had a valid bond. This bond was taken out in 1947 for a 5 year period and the proper licenses were duly issued. Sometime in 1950, *the exact time does not appear,* one of the sureties moved to Alabama. Whether it was before or after the transaction out of which this suit arose does not appear.

"Section 1714 specifically provides that when one of the sureties leaves the state then the County Court Clerk is to notify the agent that he has 10 days in which to produce an acceptable surety. At the end of that time if no surety is forthcoming the license is revoked. There is no showing in this case that the County Court Clerk ever called upon complainant to

produce a new surety. Complainant's license was not revoked as Exhibit 1 to his testimony shows. Strictly speaking the statute places the burden on the County Court Clerk to see that a new surety is secured where one moves away. The statute does not say that the real estate agent must bring one in as soon as one surety moves away.

"Defendant's contention must fail for a second and most elemental reason. When the complainant exhibited a bond good on its face and the proper licenses then the burden of proof shifted to the defendant to show that at the time of the transaction in question the complainant did not have in effect a valid bond. The proof nowhere shows when the surety left the State of Tennessee except that it was sometime in 1950. The only testimony dealing with this phase of the case is that of the complainant and he was frank to admit that he did not remember the precise date. The bond was valid when made and a presumption of validity would continue until rebutted by competent evidence. There is no evidence to fix any time that the bond was not proper."

The argument on the question of the burden of proof accords with our recent holding in Pyles v. Cole, 34 Tenn. App. 601, 241 S. W. (2d) 841, 842, 844, from which we quote:

"Defendants' plea that plaintiff was not a legally licensed real estate broker presented an affirmative issue as to which the burden of proof was upon them. Morton v. Imperial Realty Co., 133 Tenn. 681, 182 S. W. 230; Rugg v. Green, 2 Tenn. App. 406, 408."

For the reasons indicated the decree will be affirmed with costs.

Hale and Howard, JJ., concur.