**PACESETTER PROPERTIES, INC., Plaintiff-Appellant,**

v.

**L. H. HARDAWAY, Sr. and L. H. Hardaway, Jr. d/b/a Windlands Center, Defendants-Appellees.**

Court of Appeals of Tennessee, Middle Section, at Nashville.

Nov. 23, 1981.

Permission to Appeal Denied by Supreme Court June 21, 1982.

Bass, Berry & Sims by Steven A. Riley and Leigh Davidson, Nashville, for plaintiff-appellant.

Harwell, Barr, Martin & Sloan by Lin S. Howard, Nashville, for defendants-appellees.

## ABRIDGED OPINION

TODD, Presiding Judge, Middle Section.
(With the concurrence of the participating judges, the original opinion has been abridged for publication.)

The plaintiff, Pacesetter Properties, Inc., has appealed from the Chancellor's decree dismissing its suit against the defendants for a real estate broker's commission.

Appellant presents the following issues for review:

A. Is plaintiff entitled to a reasonable real estate brokerage commission because its agent, George Butler, was the procuring cause of the lease between defendants and their lessee?

B. Did the Chancellor err in holding that declaratory relief is unavailable in this case on the ground that a necessary party was not joined?

C. Is plaintiff entitled to judgment equal to the usual and customary commission for similar services in this locality for procuring the Stein-Mart lease?

The complaint alleges that defendants are liable to it upon the following facts:

In October, 1978, defendants agreed to allow one George Butler, then employed by Leasing Management Development Company, to attempt to secure a tenant for defendants' property; in October, 1978, Butler introduced one Jay Stein to one of the defendants and showed Mr. Stein the property; negotiations proceeded between Mr. Stein, Butler and the defendants until February 1, 1979, when Butler's connection with Leasing Management terminated and he became connected with plaintiff and withdrew from negotiations at the request of defendants; Leasing Management assigned to plaintiff any commissions due from any lease executed between defendants and Mr. Stein in consideration of plaintiff paying to Leasing Management 20% of the amount collected by plaintiff; on May 8, 1979, Stein executed a lease with defendants.

The answer admits that defendants authorized Leasing Management to negotiate a lease with Mr. Stein but only for a period expiring November 15, 1978. It is denied that any lease was negotiated by Butler, Leasing Management or plaintiff. It is admitted that a lease was executed on May 8, 1979, but participation in negotiations therefor by Butler, Leasing Management or plaintiff is denied.

The evidence shows that in early November, 1978, when defendants were demanding a ten year lease, Butler notified defendants that Stein refused a ten year term and considered the rent too high.

Stein lost interest in defendant's property and became interested in two other properties; he completely lost interest in the Nashville area and started looking for locations in other cities; and it was only after he failed to find a location elsewhere that he reconsidered and reapproached defendants.

On November 7, 1978, Hardaway inquired of Butler as to whether Stein was still interested and received a negative reply. Thereupon, Hardaway executed a short term lease with another tenant on the same property.

Several months thereafter, Stein contacted Hardaway to further inquire about Windland Center. The property was still available and the parties decided to deal directly. Hardaway called LMDC to inform them that they would negotiate between themselves. However, Butler continued to telephone the parties to stay abreast of the negotiations.

On May 8, 1979, Hardaway and Stein entered into a two year written lease with three separate options to renew covering a total of eleven years.

Plaintiff argues that it was the proximate, efficient, and procuring cause of the lease between Hardaway and Stein-Mart Nashville, Inc. Mr. Butler, as broker's agent for LMDC, introduced the parties, showed the property, and participated in the negotiations.

Defendant responds that while it orally authorized plaintiff to procure a lessee for the space in Windland Center, the authorization was limited. It did not extend beyond the negotiations concerning the original proposal. Defendant argues that since a lessee was not found within the time limitations, the authorization terminated and the deal was off. Therefore, Butler's authority to act as agent on behalf of LMDC expired before a lease was consummated and the right to a commission was extinguished.

Appellant cites *Robinson v. Kemmons Wilson Realty Co.*, 41 Tenn.App. 297, 293 S.W.2d 574 (1956) which contains a comprehensive analysis of authorities and definition of the rights of real estate brokers to a commission where the sale is actually closed by the owner or another agent.

In the cited case, the realtor asked the owner whether he wanted to sell his house. The owner replied he would sell it for $24,500; and the owner authorized the realtor to show the house to Fondren, but only at the stated price. After seeing the house, Fondren offered $20,000 which was refused. An increased offer of $21,500 was likewise refused with the statement that owner would take $23,000 and pay a commission. About three weeks later, Fondren contacted the owner and negotiations produced a sale at $21,500.

The Trial Judge awarded a commission to the realtor, but this Court reversed and said:

In our opinion, this cause turns almost entirely on whether or not negotiations between defendants and the Fondrens, after the introduction of the Fondrens by Wade, were broken off in good faith, and, therefore, whether or not the sale was the result of new and independent negotiations.

. . . .

. . . in the instant case, the defendant Albert Robinson did not take the negotiations out of the hands of Wade for the purpose of concluding a sale to the Fondrens. He took it out of Wade's hands, or out of the hands of Kemmons Wilson Realty Company, because Wade's prospect was unwilling to meet the terms on which Robinson was willing to sell . . . .

In *Newman v. Hill*, 29 Tenn.App. 388, 196 S.W.(2d) 1008, the suit of the real estate broker was dismissed by the Chancery Court and that dismissal was affirmed by the Court of Appeals, with certiorari denied by the Supreme Court. We quote from the opinion of Ketchum, J., in that case, as follows:

"This is not a case of the owner stepping in and secretly closing a deal with the agent's customer for the purpose of escaping liability for the commission. The deal involved an exchange of properties rather than a sale, and Wright's agent, who came into the picture after Newman's sole agency expired, submitted the offer, and the only offer, that Hill was willing to accept. * * * It is well settled by the authorities that complainant is not entitled to the commission merely because he introduced Wright to Hill as a prospective purchaser before his sole agency expired; the rule in such cases is that the agent is not entitled to the commission unless the contract is obtained with the time limited." *Newman v. Hill*, 29 Tenn.App. 388, 391–393, 196 S.W.(2d) 1008, 1009.

. . . .

"The rule generally applied is that the owner cannot delay consummation of the transaction until after termination of the agency and avoid liability for the commission upon a sale subsequently made to a purchaser produced by the agent. . . . But, where no sale was made by the agent before termination of the agency, the owner may sell to a purchaser without liability for the broker's commission, if the owner acts in good faith without hindrance or interference of the agent in closing the sale before the agency terminated. The provision in complainant's contract with Hall, relied on to support the claim for a commission for the sale of the half interest in the plantation to Simpson November 24, 1934, was designed to assure compensation for service rendered by the broker under the contract before its termination, a service which operated as the inducing or procuring cause of the sale. . . . Such a provision in a contract employing a broker cannot be construed as definitely fixing liability for the commission without reference to whether or not service was rendered and the service was the producing cause of the sale. Other matters to be considered in determining the right of the agent to a commission for service rendered after termination of the sale, are:

"(1) Nearness of the completion of the sale when the agency terminated;

"(2) Whether negotiations through the broker were in good faith terminated by the owner;

"(3) Whether the subsequent sale bears relation to and was a sequence of the

broker's introduction of the buyer to the owner;

"(4) Whether the owner delayed the sale until after termination of the agency to avoid the broker's commission;

"(5) Whether the purposes of the agency were accomplished and the agency terminated in good faith before expiration of the broker's authority to sell;

"(6) Whether or not as a result of the changed conditions, the owner and a subsequent purchaser, without reference to the introduction of the purchaser by the agent, entered into the subsequent contract of sale.

"Any or all of these elements are to be considered in determining whether or not the broker was the procuring cause of the sale, for, after all, the right of a broker to collect the commission is dependent upon whether the broker actually made the sale or was the procuring or introducing cause of the sale. See Notes II and V, under *Everson v. Phelps*, 104 Or. 288, 206 P. 306, 26 A.L.R. 789, and cases cited.

. . . .

"If a broker, after introducing a prospective customer to his employer to no purpose, abandons his employment entirely, or if, after procuring a person who proves to be unwilling to accept the terms of his principal, he merely ceases to make further endeavors to negotiate a deal with that particular individual and all negotiations in that direction are completely broken off and terminated, he will not be entitled to a commission if his employer subsequently renews negotiations with the same persons, either directly or through the medium of another agent, and thus effects a sale without further effort of the broker first employed." 8 Am.Jr., Brokers, Sec. 144, p. 1069.

The application of the above rule to the facts of the instant case is doubly strong, because the resumption of negotiations in the instant case was not brought about by any effort on the part of Mr. or Mrs. Robinson, but was the result of an unexpected telephone call to them from Mr. Fondren, asking that negotiations be reopened. (41 Tenn.App. at 303–304, 306–310, 317–318, 320–322, 293 S.W.2d 574.)

The principles announced in the cited case require that the decision in the present case be reached after resolution of the issues:

(1) Was the information obtained by defendants from plaintiff or its assignor while acting as defendant's agent the procuring, efficient cause of defendants trade with Stein on May 8, 1979?

(2) Was plaintiff or its assignor, while acting under employment as a broker, the moving and efficient cause of the trade between defendants and Stein on May 8, 1979?

(3) Did defendants interrupt negotiations being conducted by their agent, or reject the offer submitted by their agent, with intent to delay the sale by their agent, so as to avoid liability for a commission?

Before resolving these three issues, it is appropriate to point out that the present case includes three separate "sales agents," (1) Butler, the individual, who never had a contract with defendants, (2) Leasing Management, who, through its employee, Butler, had a brief contractual relationship with defendants which was terminated not later than February 1, 1979, and (3) Pacesetter, Inc., who never had a contract with defendants but claims a commission as assignee from Leasing Management and/or because of the supposed efforts of its employee, Butler, while in its employ.

So long as Butler continued as an employee of Leasing Management, any commission attributable to his efforts belonged to Leasing Management. If the sale was the proximate result of his efforts while employed by Leasing Management, then Leasing Management is entitled to a commission even though the actual sale did not occur until after the separation of Butler from Leasing Management.

If the sale occurred as a result of efforts of Butler both as an employee of Leasing Management *and* Pacesetter, Inc., then neither employer produced the sale unless successive employers are permitted to "tack"

or accumulate efforts of employees who change employers. This is not deemed possible. Especially is this impossible in the present case because Pacesetter, Inc., has no contractual standing to assert any claim against defendants because of any efforts exerted or results attained by Butler while in the employ of Pacesetter, Inc. In short, the rights of Pacesetter, Inc., are limited to the rights of Leasing Management which were assigned by Leasing Management to Pacesetter, Inc.

Thus, issue (1) above, must be:

(1) Was the information obtained by defendants from Butler while he was an employee of Leasing Management (prior to February 1, 1979) the procuring, efficient cause of defendants' trade with Stein on May 8, 1979?

This Court agrees with the Chancellor that such information was *not* the procuring, efficient cause of the May 8, 1979, trade.

Appellant relies upon *Royster, Waldran & Bacon v. Mageveney*, 77 Tenn. (9 Lea) 148 (1882). In that case, the Supreme Court affirmed a verdict for the defendant and said:

> . . . the court told the jury if plaintiffs disclosed the name of the purchaser, or introduced him, and such disclosure or introduction was the foundation upon which negotiations were begun, and the sale was effected, plaintiffs will be entitled to recover. Again the court said to the jury, you must be satisfied plaintiffs were the efficient agents in, or procuring cause of the sale, and when the broker has commenced a negotiation for the sale, the owner can not deprive him of compensation by taking that negotiation out of his hands and completing the sale himself. The law of the case was in these several propositions, submitted to the jury in all its material aspects.
>
> But it is further insisted that the judge erred in charging, that "to entitle plaintiffs to recover in this case, you must be satisfied from the proof, that they were the efficient agents in, or procuring cause of the sale of the property to Williams in

September, 1877, or that the plaintiffs being employed by the defendant for that purpose, found and introduced Williams to him, as a purchaser of the property, and that Williams was willing and able to purchase at the price and on the terms demanded by defendant, and that the sale resulted in consequence of such introduction. (77 Tenn. at 150–151.)

The cited opinion does not support the position of appellant.

■ Appellant also relies upon *Thomas v. Million*, 35 Tenn.App. 604, 250 S.W.2d 111 (1952). In that case, the Chancellor found for the plaintiff on the ground that the defendant had wrongfully terminated the agency in order to defraud the agent of his commission. In the present case, there was no wrongful termination. The Chancellor held that the agency expired by time limitation. This Court concurs. In addition, the efforts of Leasing Management (through Butler) ceased when Butler left the employ of Leasing Management. So, by expiration of time or by abandonment, the agency of Leasing Management terminated long before the lease was agreed upon.

■ Appellant next cites *Royster, Waldran & Bacon v. Mageveney, supra,* for the proposition that, when a broker has commenced negotiation, the owner may not defeat the claim of the broker by removing the broker and completing negotiations, himself. This is a valid principle of contract law, that a party may not refuse payment to the other party for non-performance when the refusing party has deprived the other party of the opportunity to perform. Such did not occur in the present case. Butler did produce a customer who was *interested* in leasing the property, but Butler never produced a customer who was able, willing and ready to lease on terms satisfactory to defendants. Ordinarily, the agent's fee is earned when he presents a customer able, willing and ready to deal on terms satisfactory to his principal. This is generally evidenced by a written offer on terms previously named by the principal. It is generally the duty of the agent to

persuade the buyer to agree to all requisite terms and conditions. If he fails to do so within the agreed time, or within a reasonable time, then he has failed to qualify for compensation. When the agent fails to finalize the deal after reasonable opportunity to do so, then the principal may negotiate further, through another agent or directly himself, and if a contract results, the first agent may not claim a commission. The test of liability in such a case is whether the activity initiated by the agent terminated, followed by a hiatus in activity and a subsequent renewal of negotiations without participation of the agent.

■ Appellant next insists that Butler was the procuring cause of the lease. The record does not support this insistence. It is true that Butler showed the property, introduced the principles and conducted initial negotiations. It is also true that defendant "took over" and continued negotiations. If a lease had then resulted, Butler's efforts would have been the procuring cause; but this is not what occurred. The negotiations begun by Butler and continued by Hardaway were discontinued without an agreement. After a substantial lapse of time, the customer reopened negotiations, and a lease was finalized on terms entirely different from the terms initially discussed.

The Chancellor found, and this Court agrees, that there was a sufficient "break-off" of negotiations and sufficient lapse of time before renewal of negotiations to prevent the initial effort of Butler from being the procuring cause of the lease.

*Thomas v. Million*, 35 Tenn.App. 604, 250 S.W.2d 111 (1952), cited by appellant, involved facts not included in the present case. In *Thomas v. Million*, this Court said:

... The Chancellor found that the Cowells agreed to buy on condition the price be reduced by the amount of the commissions which would be due complainant in case of sale by him. On that date defendant wrote complainant a letter terminating the agency contract and on July 5, 1950, the Cowells agreed to purchase the property for $15,500.

The Chancellor found as a fact that defendant terminated the listing contract in order to avoid the payment of commissions and negotiated with the Cowells while the listing was in full force and effect and "perpetrated a fraud upon the complainant." 35 Tenn.App. at 606, 250 S.W.2d 111.

■ Appellant cites *Gilbert v. Smith*, 14 Tenn.App. 500 (1932), wherein the Chancellor found with the concurrence of this Court that the trade or exchange was the direct result of the activities of the agent. The evidence does not support such a finding in the present case. The "customary commission" allowed on the exchange was one half of the commission ordinarily charged on a sale. This Court did cite and quote from *Siler v. Perkins*, 126 Tenn. 380, 149 S.W. 1060, 47 L.R.A. (NS) 232 to the effect that a seller is liable to the agent who brings the parties together even though the sale is on terms different from those specified in the agent's authority. This rule applies where negotiations continue without interruption to an agreement. The rule does not apply when, as in the present case, the initial negotiations terminate without an agreement and there is a subsequent reinitiation of negotiations by the buyer without solicitation of the agent.

■ Appellant cites *Arrington & Farrar v. Cary*, 64 Tenn. (5 Baxt) 609 (1875), wherein Cary employed Arrington to sell his house for $13,000. Cary showed the outside of the house to Brien and priced it at $14,000 but Brien was unwilling to make any offer until he could see the inside of the house. Cary then showed Brien the house and *shortly thereafter* sold him the house for $10,050. The words, "shortly thereafter," are the key to the allowance of a fee in that case. There was no termination of dealing, delay and subsequent re-initiation by the buyer as in the present case.

■ Appellant seems to conceive that, once an agent has introduced a customer to his principal, he (the agent) thereby has a perpetually vested interest in any transaction taking place between the customer and the principal. Such is not the

rule. The rights of the agent are limited to those transactions of which his efforts are found to be the efficient, procuring cause. It does not apply to negotiations instituted in good faith after a substantial delay following a termination of first negotiations.

If the agent is the procuring cause of the transaction, he is due a fee; if he is not the procuring cause, he is not entitled to a fee. Leasing Management was not the procuring cause of the lease negotiated by Stein with defendants. It is not entitled to a fee.

■ Appellant next relies upon evidence that Butler contacted Hardaway in February at the request of Stein to inquire if the space was still available. This does not indicate that the first negotiations were still open. Indeed, it indicates that all parties considered that the first negotiations had terminated. As previously pointed out, Butler's authority terminated when he left the employ of Leasing Management. His new employer was never authorized to act for defendants. Indeed, Butler was specifically instructed to desist from further efforts. Therefore, plaintiff, Pacesetter Properties, cannot rely upon any activity of Butler as its own employee because Pacesetter had no authority from Hardaway, and Pacesetter, as assignee of Leasing Management, cannot rely upon activity of Butler after he left the employ of Leasing Management.

Butler's inquiry as to availability and Hardaway's response thereto is not sufficient to establish the employment of Pacesetter by Hardaway.

■ Appellant relies upon Hardaway's telephone call to Butler that he (Hardaway) would negotiate directly with Stein. This was after the termination of negotiations and Butler's departure from Leasing Management. The call cannot be interpreted as an extension of the agency of Leasing Management because Butler no longer worked for Leasing Management. It is not interpreted by this Court as creating a new relationship with Pacesetter. Rather, it was a courteous reminder to Butler that he was no longer authorized to act for Hardaway.

■ Appellant relies upon Butler's testimony that no time limit was placed on his authority. Hardaway testified otherwise, the Chancellor found otherwise, and this Court agrees. Moreover, Butler's authority was terminated by his own act of leaving the employ of Leasing Management which was the agency employed by Hardaway. Furthermore, even without a time limit of authority, the "break-off" of negotiations followed by a substantial delay and a new approach by the prospect to the seller without authorized participation of the agent, is sufficient to terminate the rights of the agent without an express time limitation.

■ Appellant next insists that, even after the agency is terminated, the agent is entitled to his fee if the deal is closed by the *continued efforts of the agent.* In the present case, the only effort asserted by appellant is Butler's telephone call to Hardaway in February *at the request of Stein* to inquire whether the property was still available. This is not a "continuation of efforts," especially after the individual making the effort has terminated his connection with the agency employed by the seller.

■ Appellant next insists that the Chancellor should have found "bad faith" or "attempt to overreach" on the part of Hardaway. This insistence is based upon the premise that the Chancellor incorrectly ruled upon the credibility of witness. There is nothing in this record to justify this Court in reversing the finding of the Chancellor on credibility. Moreover, appellant's brief presents no justification for finding "bad faith" or "attempt to overreach." If the efforts of a broker have failed to produce a contract, and negotiations have "broken off," it is not "bad faith" or "overreaching" for the seller to respond to later overtures of the buyer without allowing the broker to participate in the renewed negotiations.

■ From the foregoing discussion, it is obvious that the answers to the three issues stated above must be adverse to appellant.

Appellant complains that the Chancellor refused declaratory relief because Leasing Management was a necessary, but absent party. This question is moot because this Court has determined that neither Leasing Management nor Pacesetter has any rights arising from the subject lease.

Appellant insists that it is entitled to "the usual and customary commission for similar services in the locality" as held in *Arrington & Farrar v. Gary, supra*, already discussed. That case holds that *if a commission is earned* and no particular rate of commission has been agreed upon, the usual commission will apply. No authority is cited to sustain a judgment for "the usual commission" when, under the facts, the broker is entitled to nothing.

Appellant's final plea is that this Court award a "reasonable commission" on the theory of "quantum meruit". Appellant asserts, but fails to cite evidence to support the assertion that the reasonable value of its services to defendant is $50,000. In view of the well known contingent character of broker's commissions, there is no basis for allowing a "quantum meruit" commission to a broker who has not produced the sale. To do so would be to recognize legal liability for a "finder's fee" or "introduction fee" independent of the facts required to establish a broker's commission. Such fees are created by contract and not by judicial fiat. Although not strictly material, the record does show that Hardaway offered a modest "finder's fee" which was refused.

The decree of the Chancellor is affirmed. Costs of this appeal are taxed against appellant. The cause is remanded for collection of costs and such other proceedings, if any, as may be necessary and proper.

Affirmed and remanded.

LEWIS and CANTRELL, JJ., concur.