**Jerry R. PARKS, dba Park Place Properties, Plaintiff/Appellee,**

v.

**William Carloss MORRIS, III, Trustee under the William Carloss Morris, III, Sharon Kay Morris and Morris Children Charitable Remainder Unitrust, Defendant/Appellant.**

Court of Appeals of Tennessee, Middle Section, at Nashville.

Aug. 30, 1995.

Permission to Appeal Denied by Supreme Court Dec. 18, 1995.

**546**

J. Randall Hooper, Hooper & Hooper, Brentwood, for appellant.

John S. Hicks, Darwin A. Hindman, III, Baker, Donelson, Bearman & Caldwell, Nashville, for appellee.

*OPINION*

LEWIS, Judge.

This is an appeal by defendant/appellant, William Carloss Morris, III, from the findings and judgment of the trial court. The court determined there was an oral agreement between plaintiff/appellee, J.R. Parks, dba Park Place Properties, and William Carloss Morris, III, for plaintiff to sell certain property belonging to the Morris family trust and for plaintiff to be paid a commission of eight percent. At the conclusion of an evidentiary hearing, the court entered judgment in favor of plaintiff for the sum of $54,000.00 plus interest.

The trial court filed a memorandum setting forth the facts and its conclusions. The pertinent portion of the Special Chancellor's findings reads as follows:

Parks met with Morris in February of 1992 to discuss the sale of property owned by a Morris family trust. Morris has a law degree and is a broker himself; because he resides in Texas, he sought the services of a local broker. At the meeting between these parties, Morris stated that if Parks found a buyer for the 421 acres owned by the trust, he would pay an 8% commission. The purchase price acceptable to Morris was $1200 to $1500 per acre. After that meeting, Parks began to market the property.

In March of 1992 Parks learned through a contact that Mr. Joe M. Rodgers was looking for a family retreat. A call to Rodgers resulted in a referral to Mr. Wilson Burton, another real estate broker who worked for Rodgers. Burton visited the property with Rodgers. Two written offers from Rodgers were conveyed through Parks to Morris in May and June of 1992. Although these offers were low, Parks advised Morris that Rodgers could afford to purchase anything he wanted; Parks requested counteroffers from Morris and made numerous efforts to contact him. Morris did not respond however, nor did he terminate the agency.

Rodgers was intensely interested in the Cheatham County property and after the efforts made by Parks, proposed to Parks

and to his own broker Burton that he contact Morris personally through a mutual friend. Burton and Parks agreed that such an effort might result in a sale. Rodgers made contact with Morris in July 1992 and made offers in August, in December and in January 1993. In February 1993, Morris visited Rodgers in Nashville. On February 16, 1993, the closing of a sale of the Cheatham County property to Rodgers from Morris occurred. The purchase price was $675,000 or approximately $1600 per acre. No commission was paid to brokers at the closing.

Mr. Rodgers testified that he was introduced to the property by his broker, Burton. He paid Burton a finder's fee after the closing. Burton testified that Parks had first advised him of the property. He would not have known about the property but for the Parks contact. Morris conceded that Parks had introduced Rodgers to his property.

An oral brokerage contract for the sale of real estate is enforceable in Tennessee. Statements made between the seller and broker are characterized as a contract if the proof is clear, cogent and convincing. *Alexander v. C.C. Powell Realty Co. Inc.*, 535 S.W.2d 154 (Tenn.App.1975). It is clear there was an agreement between Parks and this sophisticated seller. Although not an exclusive listing, at the time of the visit in early 1992, Morris hoped Parks would sell his property for at least what he had paid for it. This listing was never withdrawn. The court finds there was an 8% listing contract which the parties understood would last for a reasonable period of time unless earlier terminated.

The procuring cause issue must be resolved in Parks' favor. Rodgers, the purchaser, was known to all parties as a financially able buyer. Parks tried diligently to contact Morris in order to generate and continue negotiations with Rodgers. He stood ready to assist in this, the broker's job. Without terminating the agency however, Morris refused to deal, thereby preventing Parks' participation. Although introduction to the property does not create a vested interest in a commission, this introduction and the efforts made by Parks later, were all he was allowed to do.

Negotiations did not break off. Rodgers took the lead when Parks was shut out. The record in this case reflects at least monthly offers. Morris could have terminated his agency relationship with Parks; he could have rejected the February offer from Rodgers but did not do so. There were no changed conditions which would distance the Rodgers sale from Parks. Under these circumstances, Parks was the procuring cause of the sale.

Defendant argues that this court should reverse the trial court's decision holding defendant liable to plaintiff for breach of contract for three reasons: (1) plaintiff failed to prove the existence of an oral real estate broker's contract by clear, cogent and convincing evidence; (2) even if plaintiff's version of the agreement is taken as true, the contract would be unenforceable as it was of an indefinite duration and contrary to statute and public policy; and (3) as a real estate agent, plaintiff had a fiduciary duty to his clients which he breached by his conduct and his failure to communicate essential terms of the contract to his client. Therefore, defendant contends, plaintiff is not entitled to recover any commission for the sale of the Morris property.

Defendant first argues that "[t]he decision of the Special Chancellor is not supported by clear, cogent and convincing evidence."

■ Defendant correctly contends that in this state a real estate broker may not recover under an oral brokerage contract unless he can establish its essential terms by clear, cogent and convincing evidence. *Alexander v. C.C. Powell Realty Co., Inc.*, 535 S.W.2d 154, 157 (Tenn.App.1975).

In *Alexander* the court stated:

We hold that in Tennessee a broker's contract for sale of real estate may be oral but, by analogy, the same quantum of proof necessary to establish a trust in real estate by parole evidence is necessary to prove an oral contract between a principal and a broker for the sale of real estate and that the contract must be proven by clear,

cogent and convincing evidence though the evidence need not be uncontradicted.

*Id.* at 157–58.

■ The Chancellor considered plaintiff's testimony and his actions in marketing the property as well as the corroborating testimony of Marilyn Fletcher, another real estate broker. On the basis of this evidence, the Chancellor determined that plaintiff and defendant made a valid oral agreement under which plaintiff was to arrange a sale of the Morris trust property for an 8% commission. We agree with the Chancellor's finding.

When plaintiff and defendant met on 4 February 1992, defendant told plaintiff he wanted to get out of the property what he had put into it. Defendant told plaintiff he wanted plaintiff to handle and sell the property and would pay a commission if plaintiff produced a buyer. Plaintiff asked for a 10% commission; defendant offered 6%. They agreed upon an 8% commission. Ms. Fletcher attended the meeting and witnessed the oral agreement.

Defendant admits meeting with plaintiff and asking him to sell the property; however, defendant has given several conflicting accounts of the terms of the agreement. Defendant acknowledges that he made an agreement with plaintiff and admits that if plaintiff accomplished the terms of their contract he would be entitled to a commission. Defendant claims the commission was to be 5% instead of 8%. Defendant also insists he imposed a time limit of ninety days to close, but it remains unclear whether this meant ninety days from the date of the agreement or ninety days from the date of an acceptable offer.

Defendant admits he would owe a commission if an acceptable offer closed within ninety days. The trial court found defendant did not respond to the offers presented by plaintiff. If defendant had acted in good faith by responding to Mr. Rodgers's first offer, the sale could have closed within ninety days of acceptance. In fact, once Mr. Rodgers secured defendant's commitment to sell the property, the sale closed within twenty days.

Defendant attributes great significance to the trial court's finding that the agreement was not exclusive. As plaintiff points out, this is apparently because it is the only area in which the testimony of plaintiff and Ms. Fletcher seems to differ. We think the evidence shows that plaintiff's and Ms. Fletcher's recollections of the conversation with defendant were essentially the same and that, if anything, they point to an exclusive listing as clearly as they point to a nonexclusive one. Ms. Fletcher said the word "exclusive" was never mentioned. In her opinion, it was not an exclusive listing, but a "listing is a listing." She understood defendant did not intend to list the property with anyone else. Plaintiff agreed the term "exclusive" was never mentioned but that was what he understood Morris to mean when he said "handle my property." It is consistent with this understanding that defendant did not list the property with any other broker. However, it is not necessary to question the trial court's finding on this issue since we are of the opinion whether the agreement was exclusive or not is irrelevant to the issue of the existence of the agreement. Plaintiff did what he agreed to do and is entitled to a commission whether or not the agreement was exclusive.

■ Plaintiff produced a ready, willing and able buyer who ultimately purchased the property. Plaintiff is therefore entitled to receive his commission from defendant. A real estate broker is entitled to his commission when he procures a purchaser who is acceptable to the seller and who is ready, willing and able to buy on the seller's terms. *Cheatham v. Yarbrough,* 90 Tenn. 77, 79, 15 S.W. 1076 (1891). This is still the rule in Tennessee. *See Smithwick v. Young,* 623 S.W.2d 284, 291 (Tenn.App.1981). When a real estate broker employed to sell real estate produces or brings to the owner's notice a prospective purchaser to whom the owner makes the sale, the broker is entitled to his commission. *Arrington & Farrar v. Cary,* 64 Tenn. 609, 611 (1875).

Defendant also bases his refusal to pay the commission on what he terms a condition that the sale close within ninety days after defendant gave plaintiff the listing and the fact that the sale to Mr. Rodgers did not close within that time. Plaintiff denies that

the time limitation was part of the contract. Neither plaintiff nor Ms. Fletcher recalls any mention of a time limitation by Morris. Further, plaintiff claims the only reason for the delay in closing the sale to Mr. Rodgers was the refusal of defendant to respond to Mr. Rodgers's offer by making a counter offer. By refusing to respond defendant hindered and interfered with plaintiff's ability to close the sale at an earlier date.

Defendant also relies on *Pacesetter Properties, Inc. v. L.H. Hardaway,* 635 S.W.2d 382 (Tenn.App.1981) to support his argument that even if there was an agreement, plaintiff is not entitled to a commission on the sale because the sale did not occur until almost one year after plaintiff brought the property to Mr. Rodgers's attention. The Chancellor found the delay was due to defendant's refusal to allow plaintiff to deal. The trial court found "[n]egotiations did not break off. Rodgers took the lead when Parks was shut out."

■ Generally, a seller cannot delay consummation of a transaction until after termination of the agency and avoid liability for the commission upon a subsequent sale to the buyer produced by the real estate broker. *Pacesetter,* 635 S.W.2d at 382. Only where the seller acts in good faith may he sell to a purchaser after the agency terminates without liability for the broker's commission. *Id.*

■ Here, however, defendant had not terminated the agency relationship at the time the sale became final. Without explanation to plaintiff, defendant refused to respond to the offers plaintiff obtained from Mr. Rodgers, who was eager to buy the land quickly, only to resume negotiations with Mr. Rodgers when the time suited him. This situation differs from that in *Pacesetter,* where it was the *buyer's* later renewed interest, after a considerable lapse, that produced the fresh negotiations directly between buyer and seller from which, this court held, broker could claim no commission. *See id.* at 390. Here, defendant's refusal to respond to offers procured by plaintiff was in bad faith. The ultimate sale flowed directly from plaintiff's introduction of buyer and seller. Plaintiff's efforts, as the trial court found, were the

"efficient, procuring cause" of the sale, and he was entitled to a fee. Defendant refused all contact with plaintiff after plaintiff had produced a ready, willing and able buyer. There was no change in condition between May 1992 and March 1993 which made Mr. Rodgers more willing to buy or defendant more willing to sell. The only reason for defendant's actions is that having obtained a motivated buyer through plaintiff's efforts defendant wanted to consummate the sale himself and avoid a commission, a conclusion supported by the record.

Defendant next argues that the "alleged agreement is illusory and unenforceable."

■ This was an oral real estate listing agreement with no definite expiration date. However, that it is oral with no definite expiration date does not mean that it is against public policy or the laws of the State of Tennessee. *See Apco Amusement Co., Inc. v. Wilkins Family Restaurants of America, Inc.,* 673 S.W.2d 523, 528 (Tenn. App.1984) (holding that a contract silent as to duration was enforceable). The trial court, from all the evidence, found the agreement would last for a reasonable period of time unless terminated earlier. When the duration of a contact is indefinite, it is to be performed within a reasonable time. *Big Cola Corp. v. World Bottling Co.,* 134 F.2d 718, 721 (6th Cir.1943).

Defendant is of the opinion that the lack of time limitation made the agreement "illusory and unenforceable" and cites *Continental Motel Brokers, Inc. v. Blankenship,* 739 F.2d 226 (6th Cir.1984), a case applying Tennessee law. In *Blankenship,* the trial court enforced an oral mortgage brokerage contract against a seller who refused to pay the brokerage commission. The buyer who induced the seller to breach the brokerage contract sought to avoid liability for wrongful inducement of breach of contract. *Id.* at 227. The buyer claimed that the brokerage contract was "illusory and unenforceable" because it did not contain a time limitation. However, the Sixth Circuit Court of Appeals concluded that the lack of a time limitation did not render the agreement unenforceable. *Id.* at 232–33.

**550**

The court in *Blankenship* recognized that, under Tennessee law, "if one or both parties to a contract have the right to cancel or terminate the agreement, then the contract lacks mutuality and is unenforceable." *Id.* at 232. However, the court went on to state that "[s]ince the brokerage agreement was not *specifically stated* to be terminable at will, this court will not construe the contract so as to render it illusory and unenforceable." *Id.* at 233 (emphasis added). Here, both parties understood that defendant could withdraw the listing of his property with plaintiff at any time before plaintiff performed the contract terms, but it was not specifically stated. The parties also understood defendant wanted to sell the property as quickly as possible. Thus, even if the contract between plaintiff and defendant was terminable at will, under the analysis in *Blankenship,* it is still enforceable.

■ When the sale in the present case was completed, plaintiff had substantially performed his part of the contract and defendant had received the promised benefits. Defendant, therefore, could not refuse to pay the commission. *Hoyt v. Hoyt,* 213 Tenn. 117, 372 S.W.2d 300, 305 (1963). In *Frierson v. International Agricultural Corp.,* 24 Tenn. App. 616, 148 S.W.2d 27 (1940), this court stated:

> [L]ack of mutuality cannot be made available for annulment of a contract if the consideration, whether of money or performance, had been paid or performed; or where there has been substantial performance by the opposite party; or where there has been a performance subsequent to the execution of the instrument.

*Id.* 148 S.W.2d at 38. Here, defendant is not entitled to question the validity of the listing agreement on the grounds of lack of mutuality. Defendant had no excuse for his refusal to pay plaintiff the commission.

■ The agreement made between plaintiff and defendant is not in violation of Tennessee Code Annotated section 62–13–312, the sole purpose of which is to "provide guidelines for disciplinary actions taken by the Tennessee real estate commission." Tenn.Code Ann. § 62–13–312(e) (1994). The legislature did not intend the statutory

guideline cited by defendant, Tennessee Code Annotated section 62–13–312(b)(9), to prohibit an oral listing agreement. If the legislature intended to prohibit oral listing agreements, it could have done so by putting them within the statute of frauds. Tenn. Code Ann. § 29–2–101 (1994). The guideline is merely intended to prevent a real estate agent from obtaining a perpetual interest in the property of his principal. Here, plaintiff did not use a listing agreement form which failed to specify a definite termination date, nor did plaintiff claim the agreement was for a perpetual term.

Defendant next insists "if an agency existed, ... plaintiff breached his fiduciary duty to defendant".

■ Real estate brokers owe their principals a fiduciary duty to "refrain from prejudicing their [principals'] interest in favor of [their] own," and also "a duty of honesty, candor and fair dealing to all those with whom [they deal]." *Youngblood v. Wall,* 815 S.W.2d 512, 516 (Tenn.App.1991).

■ Defendant argues that plaintiff should not receive his commission because plaintiff did not remind defendant or the closing attorney of his agreement or appear at the closing to collect his commission. We are of the opinion that this reasoning is erroneous, for several reasons. First, Mr. Rodgers reminded defendant of his commission agreement and included the commission as a term of the sale. Plaintiff was aware of this disclosure. Second, defendant did not deny that plaintiff was his agent in any of his conversations with plaintiff or anyone else. Defendant only said that plaintiff did not have an exclusive listing. Defendant gave plaintiff no reason to believe defendant would not pay the commission. Third, plaintiff procured Mr. Rodgers as a buyer but realized defendant, for whatever reason, decided to "close" the deal himself. No overwhelming reason appears in this record for plaintiff to involve himself in the details of the deal after procuring a buyer, particularly when defendant was himself a sophisticated land speculator who knew his way around a land transaction. Note, however, defendant's familiarity with such deals does not

absolve him of his obligation to plaintiff. A landowner who has listed his real estate with a broker cannot avoid a commission by taking the negotiations out of the hands of the broker after the broker has produced a purchaser. *Bryan v. Purnell*, 5 Tenn.C.C.A. 623, 628–29 (1914). Finally, plaintiff only found out about the closing a few days before it occurred. Plaintiff justly assumed defendant had not contacted him because defendant did not need any further assistance from plaintiff.

Furthermore, we are of the opinion that, under the circumstances, plaintiff acted consistently with his fiduciary duty to defendant. Plaintiff understood that as part of his fiduciary duty to defendant he should not interfere with the closing simply to collect his commission. Plaintiff's duty was to provide a buyer to his principal and get the transaction closed. Defendant, for his part, may not take over the negotiations with the buyer produced by plaintiff, cut off all communications with plaintiff, close the deal without telling plaintiff and then accuse plaintiff of violating his fiduciary duty.

We have reviewed each of defendant's issues and find them to be without merit.

The Chancellor's findings are supported by a preponderance of the evidence. The oral real estate listing agreement between the parties is, as found by the Chancellor, supported by clear, cogent and convincing evidence.

It therefore results that the judgment of the Chancellor is affirmed in all respects, and the cause is remanded to the Chancery Court for the enforcement of its judgment and any further necessary proceedings. Costs on appeal are taxed to defendant/appellant.

TODD, P.J., M.S., and KOCH, J., concur.