# IN THE COURT OF APPEALS OF TENNESSEE
## WESTERN SECTION AT JACKSON

----------------------------------------------------------------------

**FILED**

Dec. 16, 1997

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

| | | |
|---|---|---|
| **JOAN DOUGLAS and** | ) | |
| **GERMANTOWN REALTY, INC.,** | ) | |
| d/b/a **COLDWELL BANKER,** | ) | |
| | ) | SHELBY CHANCERY |
| Plaintiffs\Appellants | ) | |
| v. | ) | |
| | ) | |
| **FRANK TIBBS and** | ) | Appeal No. 02A01-9602-CH-00033 |
| **AFSAMEH M. TIBBS,** | ) | |
| | ) | |
| Defendants\Appellees | ) | |

APPEAL FROM THE CHANCERY COURT OF SHELBY COUNTY
AT MEMPHIS, TENNESSEE
THE HONORABLE FLOYD PEETE, CHANCELLOR

**JAMES H. KEE**
780 Ridge Lake Boulevard, Ste. 202
Memphis, TN 38120
Attorney for Appellant

**J. MICHAEL FLETCHER**
5583 Murray Avenue, Suite 100
Memphis, TN 38119
Attorney for Appellee

**REVERSED and REMANDED**

**WILLIAM H. INMAN, SENIOR JUDGE**

**CONCUR:**

**ALAN E. HIGHERS, JUDGE**

**HOLLY LILLARD, JUDGE**

**O P I N I O N**

# I

This action to recover a commission on the sale of real estate was dismissed at the close of the plaintiff's case. She appeals and presents for review the propriety of the dismissal of her case.

Subject real estate was purchased by the defendants in 1985. Four years later they listed the property with the plaintiff, a licensed agent. The listing remained effective but unfruitful until 1991 when the owners selected another realty firm (Mills), and listed the property with it, which also proved to be unfruitful.

When the Mills listing expired, the plaintiff arranged a six-months lease of the property with Willingham. Upon the expiration of the lease the owners again listed the property with the plaintiff for a period beginning March 26, 1992 and ending September 26, 1992, at a price of $335,000.00. This listing was extended to April 2, 1993 at a reduced price of $310,000.00.

During the listing period, in early 1993, Gary Davis contacted the plaintiff and expressed an interest in purchasing subject property. She verified Davis' employment and credit history and reported her findings to the defendants.

Davis testified that from the beginning he intended to purchase the property but delayed doing so until certain other obligations were resolved. As a furtherance of his intention he negotiated, through the plaintiff, a lease with option to purchase agreement with the defendants and made a security deposit of $2,200.00 and an earnest money payment of $10,000.00. When certain other obligations were resolved he made an application for a loan at Union Planters Bank in early 1994. This loan was refused. The defendants suggested a California lender might be receptive to a loan application, or failing that, the local National Bank of Commerce might consider a loan to Davis.

The option held by Davis expired March 31, 1994.

The California lender rejected Davis' loan application in April, 1994.

The plaintiff continued her efforts to arrange a loan for Davis, and conferred with the defendants on April 26 and May 3, 1994 about processing the application

with the National Bank of Commerce. In the meantime the Davis' continued to reside in the house. The plaintiff assumed that the option had been extended, and the defendants at no time informed her to cease her agency activities.

In August, 1994, the plaintiff was informed by Davis to prepare a new contract for National Bank of Commerce, and contacted the defendants, who told her that "the deal was off, there was no deal, that I was not involved."

Davis testified that shortly after he made application to the California lender he talked with the defendants about his continuing residency in the house, and that he and the defendants orally agreed to extend the option for six months. He testified that the defendants said nothing about the plaintiff being no longer involved, and he continued to discuss his loan application at National Bank of Commerce with her throughout the summer of 1994. The oral extension was confirmed by letter dated July 1, 1994 from the defendants to Davis.

The defendants sold the property to Davis on October 3, 1994 for $305,000.00. Credit for the security deposit of $2,200.00 and the earnest money payment of $10,000.00 was given to Davis by the defendants.

The plaintiff sought to recover a sales commission on two theories: (1) after Davis' option to purchase expired, the plaintiff, with the defendants' approval, continued her efforts to assist Davis in procuring a loan to purchase the property which constituted an implied renewal of the defendants' agreement to pay her a commission, and (2) *quantum meruit.* An additional ground for recovery, constructive fraud, is asserted for the first time, on appeal, which we cannot consider.

The Chancellor dismissed the plaintiff's case, upon motion, because (1) the plaintiff admitted "there was no contract in existence at that time," (2) the plaintiff admitted that as of April 2, 1994 she had no willing buyer, and that the defendants "could have told her the deal was off," (3) there was insufficient proof that the listing agreement was extended.

To put the undisputed facts in perspective, we reiterate that the original option held by Davis expired March 31, 1994, and that it was extended for six months, culminating in its exercise and the subsequent sale of the property to the defendants

on October 3, 1994. So far as the record reveals there is little doubt that the sale was facilitated by the efforts of the plaintiff.

## II

In a bench trial a motion to dismiss should be denied if the plaintiff has established a *prima facie* case. *City of Columbia v. C.F.W. Const. Co.,* 557 S.W.2d 740 (Tenn. 1977). Our review of the findings of fact made by the trial court is *de novo* upon the record of the trial court, accompanied by a presumption of the correctness of the finding, unless the preponderance of the evidence is otherwise. TENN. CODE ANN. § 50-6-225(3)(2), *Stone v. City of McMinnville,* 896 S.W.2d 584 (Tenn. 1991), but no presumption attaches to legal conclusions or when the conclusions are based on undisputed facts. *National Bank of N.C. v. Thrailkill,* 856 S.W.2d 150 (Tenn. App. 1993).

The plaintiff argues that the transaction was ultimately closed pursuant to the exercise of an extension of the option by Davis granted after the expiration of the listing period and the original option period, which justifies the litigant's conclusion that the defendants impliedly renewed the agreement to pay the plaintiff a commission in the event Davis purchased the property.

In *Pyles v. Cole,* 241 S.W.2d 841 (Tenn. App. 1951), the broker, with the knowledge of the owners, continued to show the property after his listing expired. The defendants sold their property to one Crockett, to whom the property had been shown by the broker. The case for a commission was resisted on the grounds that the listing contract had expired, and that the sale was not the product of the broker's efforts. This Court held, *inter alia,* that " . . . a contract will be deemed renewed . . . where the principal has recognized that the broker is continuing negotiations looking to a sale . . . " It is well settled in this State that if the broker's efforts were the procuring cause of the sale, he is entitled to his commission. See *Robinson v. Kemmons Wilson Realty Co.,* 293 S.W.2d 574 (Tenn. Ct. App. 1956); *Pacesetter Properties Inc. v. Hardaway,* 635 S.W.2d 382 (Tenn. App. 1981). As held in *Pacesetter, supra,*

4

> If the agent is the procuring cause of the transaction, he
> is due a fee; if he is not the procuring cause, he is not
> entitled to a fee.

The evidence thus far presented indicates that the plaintiff did much more than merely introduce Davis to the owners. She procured Davis and assisted in his leasing the property with the eventual purpose of purchasing it. Davis, so far as the proof shows, intended from the beginning of his occupancy to purchase the property, but was hindered by financing obstacles, later overcome. We think that under all of the circumstances presented, the plaintiff at the least established a *prima facie* case for relief.

The judgment is reversed and the case is remanded for a new trial, with costs assessed to the appellees.

_____
William H. Inman, Senior Judge

CONCUR:


_____
Alan E. Highers, Judge


_____
Holly Lillard, Judge

**JOAN DOUGLAS and**
**GERMANTOWN REALTY, INC.,**
d/b/a **COLDWELL BANKER,**

  Plaintiffs\Appellants

v.

**FRANK TIBBS and**
**AFSAMEH M. TIBBS,**

  Defendants\Appellees

)
)
)
)
)
)
)
)
)
)
)
)

SHELBY CHANCERY

Appeal No. 02A01-9602-CH-00033

_____

**J U D G M E N T**

_____

This cause came on to be regularly heard and considered by this Court, and

for the reasons stated in the Opinion of this Court, of even date, it is Ordered:

1. The judgment of the trial court is reversed and the case is remanded for a

new trial.

2. Costs of this appeal are taxed against the appellee for which execution

may issue if necessary.

ENTER:

_____
William H. Inman, Senior Judge

_____
Alan E. Highers, Judge

_____
Holly Lillard, Judge