JESSE A. MILLER, Plaintiff in Error, v. RAY C. JONES and Wife, Defendants in Error. —387 S.W.(2d) 627.

Eastern Section.  November 20, 1964.

Certiorari Denied by Supreme Court March 2, 1965.

Ely & Ely, Knoxville, for plaintiff in error.

Flynn & Flynn, Knoxville, for defendants in error.

McAMIS, P.J.   In this case plaintiff Jesse A. Miller, a real estate salesman, appeals from the action of the Circuit Judge, sitting without a jury, in dismissing his suit for commission claimed against defendants Ray C. Jones and wife.

Plaintiff first showed defendants' property to Dr. and Mrs. Acuff, the ultimate purchasers, and insists the Court erroneously disallowed his claim for commission, not-

withstanding the express finding that there was no fraud on the part of defendants in selling to the Acuffs. (There is no assignment directed to the Court's finding of no fraud.)

In early 1962, defendants gave plaintiff an oral, open listing and agreed to sell their home for $47,000.00 to a purchaser produced by plaintiff. No time limit was mentioned.

■■ The proof shows that under an open listing the owner merely agrees that the agent may show his property to prospective purchasers and, if he effects a sale, is to be paid the regular real estate commission. If the owner himself sells the property by his own efforts or through another broker no commission is payable under such open listing. An open listing is the antithesis of an exclusive listing under which the broker is entitled to commission in event the owner makes a sale within the stipulated time, whether or not due to the broker's efforts.

In addition to Mrs. Acuff, plaintiff showed the property to two other prospects without success. It was shown to Mrs. Acuff near the last of October, 1962. Mrs. Acuff was not interested in the property because there was no play room adjoining the kitchen and so advised plaintiff. Plaintiff later unsuccessfully attempted to interest her in the property while showing her other property he had for sale. Mrs. Acuff each time told plaintiff she was not interested in defendants' property. She testified negotiations through plaintiff were completely broken off because she definitely was not interested in buying the property for the reason indicated and that defendants' property was not further considered until the spring of

1963, when she became interested under the peculiar circumstances to be stated.

Dr. George Stevens, a witness for defendants, in April, 1963, had a house for sale which he showed to the Acuffs. Although the Acuffs expressed an interest in the property, Dr. Stevens finally decided not to sell his property. While negotiating with the Acuffs, Dr. Stevens had told defendant, Ray Jones, he (Stevens) would be interested in buying his property in event he should sell to the Acuffs. When he decided not to sell to the Acuffs, Dr. Stevens suggested to defendant Ray Jones that the Acuffs might be interested in buying his property. Mr. Jones stated the Acuffs had already seen his property and had refused to buy it because it had no play room near the kitchen.

Defendant, Ray C. Jones, testified that it then occurred to him that an open patio could be enclosed to meet Mrs. Acuff's objection. He then called her on the telephone and she agreed to have her husband look at the property with this change in mind. Thereafter, defendants agreed to reduce the price $5,000.00 and sold it the last of April or the first of May, 1963, to the Acuffs for $42,000.00. Defendants requested and received no assistance from plaintiff in making and closing the sale.

Plaintiff, upon learning of the sale, demanded that he be paid commission on the sale price of $42,000.00. Defendants refused payment and this suit resulted.

We concur in the holding of the Circuit Court that, under the circumstances, the negotiations initiated by plaintiff with the Acuffs had broken off and had terminated when the Acuffs became interested in the property for the first time in April, 1963. We think it is also fair

to say that plaintiff having been rebuffed by Mrs. Acuff two or three times had completely abandoned his efforts to sell the property to the Acuffs and that, in view of his previous unsuccessful efforts to interest them in the property, it can not be said that his efforts were the procuring cause of the sale.

Robinson v. Kemmons Wilson Realty Company, 41 Tenn.App. 297, 293 S.W.(2d) 574, appears to us to furnish direct support for the holding of the Circuit Judge in this case unless it can be distinguished on its facts as insisted in the brief of plaintiff's counsel.

In the case cited, the owner gave the broker an exclusive listing contract which by its terms expired in August, 1954. Thereafter, about October 28, 1954, the broker upon learning that E. V. Fondren was interested in buying a house called the owner and secured permission to show the house to Fondren at $24,500.00. The broker then showed the house to Fondren who offered $20,000.00, later raised to $21,500.00, for the house. The owner refused to sell at that price but agreed to reduce the price to $23,000.00 which Fondren declined to pay. After three days of negotiation carried on by the broker, the owner told the agent not to return with a $21,500.00 offer and to "forget the deal."

About three weeks later Fondren reopened negotiations by calling the owner, finally resulting in a sale for $21,500.00. The claim of the broker for a commission was disallowed.

The Court held that the right of a broker to collect commission for procuring a purchaser for realty is dependent on whether the broker actually made the sale or was the procuring cause of the sale. In determining

that question elements to be considered are set forth in the syllabus from which we quote:

"Some of the matters to be considered in determining right of real estate broker to a commission for services rendered are nearness of completion of sale by broker when agency terminated, whether negotiations through broker were in good faith terminated by the owner, whether subsequent sale bears relation to and was a sequence of broker's introduction of purchaser to owner, whether owner delayed sale until after termination of agency to avoid commission, whether purposes of agency were accomplished and agency terminated in good faith before expiration of the broker's authority to sell, and whether or not, as a result of changed conditions, owner and purchaser, without reference to introduction of purchaser by agent, entered into subsequent contract of sale."

In the concluding portion of the opinion, Judge Bejach quotes from 8 Am.Jur. 1069 as follows:

"If a broker, after introducing a prospective customer to his employer to no purpose, abandons his employment entirely, or if, after procuring a person who proves to be unwilling to accept the terms of his principal, he merely ceases to make further endeavors to negotiate a deal with that particular individual and all negotiations in that direction are completely broken off and terminated, he will not be entitled to a commission if his employer subsequently renews negotiations with the same person, either directly or through the medium of another agent, and thus effects a sale without further effort of the [part of the] broker first employed."

As was said in Barnett v. Thirkield, 201 Tenn. 528, 300 S.W.(2d) 905, merely showing the property unsuc-

cessfully to the ultimate purchaser does not entitle the broker to a commission.

Counsel for plaintiff make the following comment in their brief concerning Robinson v. Kemmons Wilson Realty Co.:

"The difference between that case and the one at bar is in the Robinson case, the realty company had an exclusive contract of sale which terminated at a certain time and it was after the termination of the contract the transaction was closed."

In making this comment counsel seem to have overlooked the following statement in the opinion: "It is conceded by plaintiff that its right to the commission claimed in the instant case is not affected by this sale agency contract, but rests entirely upon the subsequent introduction of Mr. and Mrs. Fondren as a prospective customer by Mr. Wade" (agent for the realty company).

The exclusive listing had expired and the broker at the time the owner made the sale, as in this case, had only an open listing contract upon which alone it claimed a commission. As in this case, the owner sold to a prospect originated by the broker. In that case only three weeks had elapsed after negotiations initiated by the broker had terminated. The facts of this case seem to us much less favorable to the broker who, at the time of the sale had abandoned the prospect if in fact he had not entirely abandoned the listing, and the owner himself induced the prospect to become interested for the first time in buying the property.

At 27 A.L.R.2d 1402, there appears an exhaustive annotation dealing with the right of the broker to collect a commission upon a sale made by the owner after the

broker has abandoned his agency contract. The cases listed deal with the owner's liability where the broker abandons the listing contract as well as where he has abandoned efforts to sell to the ultimate purchaser.

These cases support what we regard as the correct and sound rule that, in the absence of fraud or controlling agreement, where the broker abandons the listing or a given prospect, or fails to find a purchaser within a reasonable time who is able, ready and willing to buy, all without the fault of the owner, the broker is not entitled to commission and the owner is at liberty to sell the property to a prospect first produced by the broker.

In this case the broker had abandoned the Acuffs as prospects and, in our view, more than a reasonable time had elapsed when the owners by their own efforts effected a sale.

Affirmed.

Cooper and Parrott, JJ., concur.