# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE

FILED

July 1,1998

Cecil W. Crowson
Appellate Court Clerk

JAMES F. COOK, JR.,                    )
d/b/a COOK PROPERTIES,                 )
                                       )
    Plaintiff/Appellant,               )
                                       )
VS.                                    )          Davidson Chancery
                                       )          No. 94-1989-III
CONSOLIDATED STORES CORP.,             )
BELZ INVESTCO, L.P.,                   )
URCO, INC.,                            )          Appeal No.
UNION REALTY CO., LTD., and            )          01A01-9605-CH-00245
SOUTH PLAZA CO.,                       )
                                       )
    Defendants/Appellees.              )


APPEAL FROM THE CHANCERY COURT FOR DAVIDSON COUNTY
AT NASHVILLE, TENNESSEE

THE HONORABLE ROBERT S. BRANDT, CHANCELLOR


For Plaintiff/Appellant:

Hugh C. Howser, Jr.
Kathryn J. Ladd
Trabue, Sturdivant & DeWitt
Nashville, Tennessee

For Defendant/Appellee
Consolidated Stores Corp.:

Karyn C. Bryant
Boult, Cummings, Conners & Berry
Nashville, Tennessee

For Defendants/Appellees Belz,
URCO, Union Realty, and South Plaza:

John M. Gillum
John W. Heacock
Manier, Herrod, Hollabaugh & Smith
Nashville, Tennessee


## AFFIRMED AND REMANDED


WILLIAM C. KOCH, JR., JUDGE

# **O P I N I O N**

This appeal involves a dispute over a real estate commission on four retail properties in Memphis. After a former client leased these properties, a real estate broker filed suit in the Chancery Court for Davidson County seeking a commission from its former client and the lessors of the four properties. The trial court granted the former client's motion for summary judgment and, following a bench trial, dismissed the broker's claims against the four lessors. On this appeal, the broker asserts that the trial court erred by granting his former client's summary judgment motion and that the evidence preponderates against the trial court's dismissal of his claims against the four lessors. We have determined that the trial court properly granted the summary judgment motion and that the evidence does not preponderate against the trial court's judgment in favor of the four lessors.

## I.

In 1988, Consolidated Stores Corporation retained James F. Cook Jr., a Nashville commercial real estate broker, to locate retail space in Nashville for two of its "Big Lots" stores. While these negotiations were progressing, Consolidated Stores authorized Mr. Cook to survey the market in Memphis because Consolidated Stores was considering opening four or five stores there. By July 1990, Mr. Cook had identified fifteen possible sites in Memphis, eight of which belonged to Belz Enterprises, the lessor of the property on which one of the Nashville Big Lots stores was located. In August 1990, Consolidated Stores informed Mr. Cook that it would not be ready to consider the Memphis market until the Spring of 1991.

Mr. Cook continued to look for suitable retail space in Memphis for Consolidated Stores and in October 1990 presented Consolidated Stores with proposed leases prepared by Belz Enterprises for four locations. Consolidated Stores again informed Mr. Cook that it was delaying its expansion into Memphis. In April 1991, representatives of Belz Enterprises and Consolidated Stores met to discuss possible retail locations in Memphis but reached no agreement. In November 1991, Consolidated Stores informed Mr. Cook for the third time that it had postponed expanding into Memphis and all discussion between Consolidated Stores and Mr. Cook ended.

In November 1993 Consolidated Stores and Belz Enterprises negotiated a renewal of the lease for one of the Nashville Big Lots stores. During these negotiations, Belz Enterprises encouraged Consolidated Stores to reconsider its plans to expand to Memphis, and the parties renewed their negotiations without involving Mr. Cook. In early 1994, Mr. Cook inquired into Consolidated Stores's expansion plans in Tennessee and specifically in Memphis. On April 4, 1994, Consolidated Stores informed Mr. Cook that it had leased four properties in Memphis from Belz Enterprises on February 17, 1994. Mr. Cook demanded a commission on these transactions, and when he did not receive one, he filed suit against Consolidated Stores and the four Belz-related companies that had leased the Memphis space to Consolidated Stores.[1]

The trial court granted a summary judgment for Consolidated Stores on the ground that there was no contractual or other basis for Mr. Cook's claim that Consolidated Stores owed him a commission. Following a bench trial, the trial court entered a judgment for the four Belz-related companies based on its conclusion that Mr. Cook had not been the procuring cause of these leases. Mr. Cook argues on appeal that he performed enough work bringing Consolidated Stores and Belz Enterprises together that these parties, jointly and severally, owe him a commission.

## II.
### THE CLAIMS AGAINST CONSOLIDATED STORES

The trial court summarily dismissed Mr. Cook's complaint against Consolidated Stores because of the lack of evidence of an express or implied contract between Consolidated Stores and Mr. Cook or any other basis for recovery. While Mr. Cook concedes that there was no oral or written contract, he argues that summary judgment was improper because the facts could support a finding that the parties had an implied contract.

A summary judgment is proper if the moving party demonstrates that there are no genuine issues of material fact and that he or she is entitled to a judgment as a matter of law. *See* Tenn. R. Civ. P. 56.04; *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997). When ruling on a motion for summary judgment, the trial court must take the

---

[1]The companies were Belz Investco, Urco, Inc., Union Realty, and South Plaza Company.

strongest legitimate view of the evidence in favor of the non-moving party, discard all countervailing evidence, and draw all reasonable factual inferences in the non-moving party's favor. *See Mike v. Po Group, Inc.*, 937 S.W.2d 790, 792 (Tenn. 1996); *Byrd v. Hall*, 847 S.W.2d 208, 210-11 (Tenn. 1993). A court should grant a summary judgment only when the undisputed facts reasonably support one conclusion – that the moving party is entitled to a judgment as a matter of law. *See McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn. 1995); *Carvell v. Bottoms*, 900 S.W.2d 23, 26 (Tenn. 1995).

The only facts supporting any kind of relationship between Mr. Cook and Consolidated Stores are: (1) that Consolidated Stores agreed to allow Mr. Cook to survey the Memphis market prior to the first contact between Consolidated Stores and Belz Enterprises, (2) that Consolidated Stores negotiated briefly with Belz Enterprises in 1991 based on the earlier proposals Belz Enterprises had submitted to Mr. Cook, (3) that in 1990 Mr. Cook located two of the properties that Consolidated Stores eventually leased in 1994, and (4) that Consolidated Stores intentionally did not involve Mr. Cook in its 1994 negotiations with Belz Enterprises that led to the four leases.

An implied-in-fact contract is one that is inferred from the parties' conduct instead of from an oral or written agreement. *See V.L. Nicholson Co. v. Transcon Inv. and Fin. Ltd.*, 595 S.W.2d 474, 482 (Tenn. 1980). It arises when circumstances, including the ordinary course of dealings and custom, show that the parties mutually assented to contract, *see Mefford v. City of Dupontonia*, 49 Tenn. App. 349, 356, 354 S.W.2d 823, 826 (1961), and that the parties intended to contract. *See Weatherly v. American Agr. Chem. Co.*, 16 Tenn. App. 613, 623, 65 S.W.2d 592, 598 (1933).

When a contract is implied-in-fact, the courts will impose a corresponding duty to pay reasonable compensation. However, a promise to pay will only be implied when the work was performed under circumstances from which the person seeking payment could reasonably expect compensation from the benefitted party. *See V.L. Nicholson Co. v. Transcon Inv. and Fin. Ltd.*, 595 S.W.2d at 482. In real estate disputes, the courts are reluctant to impose contractual liability for a broker's services when they are thrust upon unwilling recipients. *See Billington v. Crowder*, 553

S.W.2d 590, 595 (Tenn. Ct. App. 1977). And although we have expressed some willingness to imply a promise on the part of the purchaser to pay a commission when the real estate agent is unable to collect from the seller, *see Williams v. Millsaps*, No. 03A01-9406-CH-00229, 1995 WL 131343, at *6 (Tenn. Ct. App. Mar. 28, 1995), *perm. app. denied* (Tenn. Aug. 28, 1995), this is only so in situations where there is a legally enforceable commission agreement between the seller and agent and the purchaser, without a valid reason, interferes by preventing the sale.

The undisputed facts in the record do not provide circumstances from which either the trial court or this court can imply the parties' mutual assent to contract. Mr. Cook testified that Consolidated Stores never discussed with him or agreed to pay him a commission and that he never expected Consolidated Stores to pay him a commission. At all times during these negotiations, Mr. Cook testified that, as in past transactions, Belz Enterprises would pay his commission if the parties reached an agreement. Similarly, Consolidated Stores's primary representative testified that he believed that Mr. Cook worked for Belz Enterprises and that it is industry custom that the lessor pays the agent's commission. Thus, Mr. Cook never had a reasonable expectation of payment from Consolidated Stores, and the trial court correctly declined to find an implied contract based on the undisputed facts.

## III.
### THE CLAIMS AGAINST THE BELZ-RELATED COMPANIES

Mr. Cook also takes issue with the trial court's dismissal of his claims against the four Belz-related companies that leased the Memphis retail space to Consolidated Stores in 1994. He contends that he was the procuring cause of these leases because he introduced the parties, provided information that became the foundation for the lease agreements, and cemented Consolidated Stores's interest in the Memphis market. We have determined that the evidence does not preponderate against the trial court's conclusion that Mr. Cook was not the procuring cause of the leases between Consolidated Stores and Belz Enterprises.

Real estate brokers earn their commission by producing a purchaser or lessee acceptable to the seller or lessor who is ready, willing, and able to buy or lease on the seller's or lessor's terms. *See Parks v. Morris*, 914 S.W.2d 545, 548 (Tenn. Ct. App.

1995). The right to collect a commission depends on whether the broker actually made the sale or lease or was the efficient, procuring cause of the sale or lease. *See Pacesetter Properties, Inc. v. Hardaway*, 635 S.W.2d 382, 390 (Tenn. Ct. App. 1981); *Robinson v. Kemmons Wilson Realty Co.*, 41 Tenn. App. 297, 318, 293 S.W.2d 574, 583 (1956).

A broker is not entitled to a commission merely because he or she introduced the parties or showed property unsuccessfully to the ultimate purchaser. *See Miller v. Jones*, 54 Tenn. App. 31, 36-37, 387 S.W.2d 627, 630 (1964). If the broker abandons the listing or fails to furnish a ready, willing, and able purchaser during the term of the agency, the broker is not entitled to a commission, and the owner may sell the realty to a prospect who originated with the broker. *See Pacesetter Properties, Inc. v. Hardaway*, 635 S.W.2d at 388-89; *Miller v. Jones,* 54 Tenn. App. at 36, 387 S.W.2d at 630.

A broker may be entitled to collect a commission if the owner delays the consummation of the sale in bad faith until after the agency terminates in order to avoid paying a commission to the agent. *See Robinson v. Kemmons Wilson Realty Co.*, 41 Tenn. App. at 317, 293 S.W.2d at 583. However, we have held that an owner is not acting in bad faith by responding to the later overtures of a purchaser without the broker's participation when the broker has failed to procure a contract and the negotiations have broken off. *See Pacesetter Properties, Inc. v. Hardaway*, 635 S.W.2d at 390. Similarly, when negotiations begun by a broker have broken off without an agreement, and the purchaser reopens negotiations after a substantial lapse of time and closes the deal on terms different from the initial proposal, the broker is not the procuring cause of the sale. *See Pacesetter Properties, Inc. v. Hardaway*, 635 S.W.2d at 389.

We hold that the evidence does not preponderate against the trial court's judgment. Even though Mr. Cook helped solidify Consolidated Stores's interest in the Memphis market, he did not bring an offer from a potential lessor that met Consolidated Stores's terms. He was never able to bring the parties to an agreement acceptable to both. The discussions concerning Consolidated Stores's entrance into the Memphis market broke off after Consolidated Stores informed Mr. Cook for the fourth, and final, time that the company was not expanding into Memphis. For two

years, there was no contact between the parties and Mr. Cook did not actively seek to renew the negotiations.  After this substantial lapse of time, Consolidated Stores and Belz Enterprises reinstituted negotiations for Memphis properties after doing business on another property in Nashville.  The eventual agreement between Consolidated Stores and Belz Enterprises involved two of the properties Mr. Cook originally proposed to Consolidated Stores, but they were in different locations in the shopping centers, had different square footage, and different lease terms and conditions.  The remaining properties that Consolidated Stores leased were not proposed by Mr. Cook.  Accordingly, we hold that the evidence does not preponderate against the conclusion that Mr. Cook was not the procuring cause of the lease transactions between Consolidated Stores and Belz-related companies.

## IV.

We affirm the trial court's decisions to grant the summary judgment dismissing Mr. Cook's complaint against Consolidated Stores and to award a judgment in favor of the four Belz-related companies.  We remand the case to the trial court for whatever further proceedings may be required, and we tax the costs of this appeal to James F. Cook, Jr. and his surety for which execution, if necessary, may issue.

_____
WILLIAM C. KOCH, JR., JUDGE


CONCUR:


_____
HENRY F. TODD, PRESIDING JUDGE
MIDDLE SECTION


_____
BEN H. CANTRELL, JUDGE